(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HEIMESHOFF *v.* HARTFORD LIFE & ACCIDENT INSURANCE CO. ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 12–729.   Argued October 15, 2013—Decided December 16, 2013

Respondent Hartford Life & Accident Insurance Co. (Hartford) is the administrator of Wal-Mart Stores, Inc.'s (Wal-Mart) Group Long Term Disability Plan (Plan), an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 (ERISA).   The Plan's insurance policy requires any suit to recover benefits pursuant to the judicial review provision in ERISA §502(a)(1)(B), 29 U. S. C. §1132(a)(1)(B), to be filed within three years after "proof of loss" is due.   Petitioner Heimeshoff filed a claim for long-term disability benefits with Hartford.   After petitioner exhausted the mandatory administrative review process, Hartford issued its final denial.   Almost three years after that final denial but more than three years after proof of loss was due, Heimeshoff filed a claim for judicial review pursuant to ERISA §502(a)(1)(B).   Hartford and Wal-Mart moved to dismiss on the ground that the claim was untimely.   The District Court granted the motion, recognizing that while ERISA does not provide a statute of limitations, the contractual 3-year limitations period was enforceable under applicable State law and Circuit precedent.   The Second Circuit affirmed.

*Held*: The Plan's limitations provision is enforceable. Pp. 4–16.

   (a) The courts of appeals require participants in an employee benefit plan covered by ERISA to exhaust the plan's administrative remedies before filing suit to recover benefits.   A plan participant's cause of action under ERISA §502(a)(1)(B) therefore does not accrue until the plan issues a final denial.   But it does not follow that a plan and its participants cannot agree to commence the limitations period before that time. Pp. 4–8.

   (1) The rule set forth in *Order of United Commercial Travelers of*

*America* v. *Wolfe*, 331 U. S. 586, 608, provides that a contractual limitations provision is enforceable so long as the limitations period is of reasonable length and there is no controlling statute to the contrary. That is the appropriate framework for determining the enforceability of the Plan's limitations provision. The *Wolfe* approach necessarily allows parties to agree both to the length of a limitations period and to its commencement. Pp. 5–7.

(2) The principle that contractual limitations provisions should ordinarily be enforced as written is especially appropriate in the context of an ERISA plan. Heimeshoff's cause of action is bound up with the written terms of the Plan, and ERISA authorizes a participant to bring suit "to enforce his rights under the terms of the plan." §1132(a)(1)(B). This Court has thus recognized the particular importance of enforcing plan terms as written in §502(a)(1)(B) claims, see, *e.g.*, *CIGNA Corp.* v. *Amara*, 563 U. S. ___, ___, and will not presume from statutory silence that Congress intended a different approach here. Pp. 7–8.

(b) Unless the limitations period is unreasonably short or there is a "controlling statute to the contrary," *Wolfe, supra*, at 608, the Plan's limitations provision must be given effect. Pp. 8–16.

(1) The Plan's period is not unreasonably short. Applicable regulations mean for mainstream claims to be resolved by plans in about one year. Here, the Plan's administrative review process ("internal review") required more time than usual but still left Heimeshoff with approximately one year to file suit. Her reliance on *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U. S. 355, in which this Court declined to enforce a 12-month statute of limitations applied to Title VII employment discrimination actions where the Equal Employment Opportunity Commission faced an 18- to 24-month backlog, is unavailing in the absence of any evidence that similar obstacles exist to bringing a timely ERISA §502(a)(1)(B) claim. Pp. 9–10.

(2) This Court rejects the contentions of Heimeshoff and the United States that the limitations provision is unenforceable because it will undermine ERISA's two-tiered remedial scheme. Pp. 10–15.

(i) Enforcement of the Plan's limitation provision is unlikely to cause participants to shortchange the internal review process. The record for judicial review generally has been limited to the administrative record, so participants who fail to develop evidence during internal review risk forfeiting the use of that evidence in district court. In addition, many plans vest discretion over benefits determinations in the plan administrator, and courts ordinarily review such determinations only for abuse of discretion. Pp. 11–12.

(ii) It is also unlikely that enforcing limitations periods that begin to run before the internal review process is exhausted will en-

Syllabus

danger judicial review. To the extent that administrators attempt to prevent judicial review by delaying the resolution of claims in bad faith, the penalty for failure to meet the regulatory deadlines is immediate access to judicial review for the participant. Evidence from forty years of ERISA administration of this common contractual provision suggests that the good-faith administration of internal review will not diminish the availability of judicial review either. Heimeshoff identifies only a handful of cases in which ERISA §502(a)(1)(B) plaintiffs have been time barred as a result of the 3-year limitations provision, and these cases suggest that the bar falls on participants who have not diligently pursued their rights. Moreover, courts are well equipped to apply traditional doctrines, such as waiver or estoppel, see, *e.g.*, *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287, 298–299, and equitable tolling, see, *e.g.*, *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95, that nevertheless may allow participants to proceed. Finally, plans offering appeals or dispute resolution beyond what is contemplated in the internal review regulations must agree to toll the limitations provision during that time. 29 CFR §2560.503–1(c)(3)(ii). Pp. 12–15.

(3) Heimeshoff's additional arguments are unpersuasive. The limitations period need not be tolled as a matter of course during internal review because that would be inconsistent with the text of the limitations provision, which is enforceable. And federal courts need not inquire whether state law would toll the limitations period during internal review because the limitations period is set by contract, not borrowed from state law. Pp. 15–16.

496 Fed. Appx. 129, affirmed.

THOMAS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES
_____

No. 12–729
_____

## JULIE HEIMESHOFF, PETITIONER *v.* HARTFORD LIFE & ACCIDENT INSURANCE CO. ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[December 16, 2013]

JUSTICE THOMAS delivered the opinion of the Court.

A participant in an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. §1001 *et seq.*, may bring a civil action under §502(a)(1)(B) to recover benefits due under the terms of the plan. 29 U. S. C. §1132(a)(1)(B). Courts have generally required participants to exhaust the plan's administrative remedies before filing suit to recover benefits. ERISA does not, however, specify a statute of limitations for filing suit under §502(a)(1)(B). Filling that gap, the plan at issue here requires participants to bring suit within three years after "proof of loss" is due. Because proof of loss is due before a plan's administrative process can be completed, the administrative exhaustion requirement will, in practice, shorten the contractual limitations period. The question presented is whether the contractual limitations provision is enforceable. We hold that it is.

## I

In 2005, petitioner Julie Heimeshoff began to report chronic pain and fatigue that interfered with her duties as

a senior public relations manager for Wal-Mart Stores, Inc. Her physician later diagnosed her with lupus and fibromyalgia. Heimeshoff stopped working on June 8.

On August 22, 2005, Heimeshoff filed a claim for long-term disability benefits with Hartford Life & Accident Insurance Co., the administrator of Wal-Mart's Group Long Term Disability Plan (Plan). Her claim form, supported by a statement from her rheumatologist, listed her symptoms as "'extreme fatigue, significant pain, and difficulty in concentration.'"[1] App. to Pet. for Cert. 7. In November 2005, Hartford notified Heimeshoff that it could not determine whether she was disabled because her rheumatologist had never responded to Hartford's request for additional information. Hartford denied the claim the following month for failure to provide satisfactory proof of loss. Hartford instructed Heimeshoff that it would consider an appeal filed within 180 days, but later informed her that it would reopen her claim, without the need for an appeal, if her rheumatologist provided the requested information.

In July 2006, another physician evaluated Heimeshoff and concluded that she was disabled. Heimeshoff submitted that evaluation and additional medical evidence in October 2006. Hartford then retained a physician to review Heimeshoff's records and speak with her rheumatologist. That physician issued a report in November 2006 concluding that Heimeshoff was able to perform the activities required by her sedentary occupation. Hartford denied Heimeshoff's claim later that November.

In May 2007, Heimeshoff requested an extension of the Plan's appeal deadline until September 30, 2007, in order

———————
[1] The insurance policy provides: "'Written proof of loss must be sent to The Hartford within 90 days after the start of the period for which The Hartford owes payment. After that, The Hartford may require further written proof that you are still Disabled.'" App. to Pet. for Cert. 10.

to provide additional evidence. Hartford granted the extension. On September 26, 2007, Heimeshoff submitted her appeal along with additional cardiopulmonary and neuropsychological evaluations. After two additional physicians retained by Hartford reviewed the claim, Hartford issued its final denial on November 26, 2007.

On November 18, 2010, almost three years later (but more than three years after proof of loss was due), Heimeshoff filed suit in District Court seeking review of her denied claim pursuant to ERISA §502(a)(1)(B). Hartford and Wal-Mart moved to dismiss on the ground that Heimeshoff's complaint was barred by the Plan's limitations provision, which stated: "Legal action cannot be taken against The Hartford . . . [more than] 3 years after the time written proof of loss is required to be furnished according to the terms of the policy." *Id.*, at 10.

The District Court granted the motion to dismiss. Recognizing that ERISA does not provide a statute of limitations for actions under §502(a)(1)(B), the court explained that the limitations period provided by the most nearly analogous state statute applies. See *North Star Steel Co.* v. *Thomas*, 515 U. S. 29, 33–34 (1995). Under Connecticut law, the Plan was permitted to specify a limitations period expiring "[not] less than one year from the time when the loss insured against occurs."[2] Conn. Gen. Stat. §38a–290 (2012); see App. to Pet. for Cert. 13. The court held that, under Circuit precedent, a 3-year limitations period set to begin when proof of loss is due is enforceable, and Heimeshoff's claim was therefore untimely.[3] *Id.*, at 13, 15

_____

[2] The parties do not dispute that Connecticut provides the relevant state law governing the limitations period in this case.

[3] Heimeshoff also argued before the District Court that even if the Plan's limitations provision were enforceable, her suit was still timely because Hartford had granted her request for an extension until September 30, 2007. Even crediting the contention that proof of loss was not due until that date, the court held that the Plan's limitations

(citing *Burke* v. *PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F. 3d 76, 79–81 (CA2 2009) (*per curiam*)).

On appeal, the Second Circuit affirmed. 496 Fed. Appx. 129 (2012). Applying the precedent relied on by the District Court, the Court of Appeals concluded that it did not offend ERISA for the limitations period to commence before the plaintiff could file suit under §502(a)(1)(B). Because the policy language unambiguously provided that the 3-year limitations period ran from the time that proof of loss was due under the Plan, and because Heimeshoff filed her claim more than three years after that date, her action was time barred.

We granted certiorari to resolve a split among the Courts of Appeals on the enforceability of this common contractual limitations provision. 569 U. S. ___ (2013). Compare, *e.g., Burke*, *supra*, at 79–81 (plan provision requiring suit within three years after proof-of-loss deadline is enforceable); and *Rice* v. *Jefferson Pilot Financial Ins. Co.*, 578 F. 3d 450, 455–456 (CA6 2009) (same), with *White* v. *Sun Life Assurance Co. of Canada*, 488 F. 3d 240, 245–248 (CA4 2007) (not enforceable); and *Price* v. *Provident Life & Acc. Ins. Co.*, 2 F. 3d 986, 988 (CA9 1993) (same). We now affirm.

## II

Statutes of limitations establish the period of time within which a claimant must bring an action. As a general matter, a statute of limitations begins to run when the cause of action "'accrues'"—that is, when "the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192, 201 (1997).

—————

provision barred her from bringing legal action any later than September 30, 2010. Heimeshoff did not file suit until November 18, 2010.

ERISA and its regulations require plans to provide certain presuit procedures for reviewing claims after participants submit proof of loss (internal review). See 29 U. S. C. §1133; 29 CFR §2560.503–1 (2012). The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under §502(a)(1)(B). See *LaRue* v. *DeWolff, Boberg & Associates, Inc.*, 552 U. S. 248, 258–259 (2008) (ROBERTS, C. J., concurring in part and concurring in judgment). A participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial.

ERISA §502(a)(1)(B) does not specify a statute of limitations. Instead, the parties in this case have agreed by contract to a 3-year limitations period. The contract specifies that this period begins to run at the time proof of loss is due. Because proof of loss is due before a participant can exhaust internal review, Heimeshoff contends that this limitations provision runs afoul of the general rule that statutes of limitations commence upon accrual of the cause of action.

For the reasons that follow, we reject that argument. Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable.

A

Recognizing that Congress generally sets statutory limitations periods to begin when their associated causes of action accrue, this Court has often construed statutes of limitations to commence when the plaintiff is permitted to file suit. See, *e.g., Graham County Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, 545 U. S. 409, 418 (2005) (resolving an ambiguity in light of "the 'standard rule that the limitations period commences when the plaintiff has a complete and present cause of action'"

(quoting *Bay Area Laundry*, *supra*, at 201)); *Rawlings* v. *Ray*, 312 U. S. 96, 98 (1941). At the same time, we have recognized that statutes of limitations do not inexorably commence upon accrual. See *Reiter* v. *Cooper*, 507 U. S. 258, 267 (1993) (noting the possibility that a cause of action may "accru[e] at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit"); see also *Dodd* v. *United States*, 545 U. S. 353, 358 (2005) (the statute of limitations in the federal habeas statute runs from "'the date on which the right asserted was initially recognized by the Supreme Court'" even if the right has not yet been "'made retroactively applicable to cases on collateral review'"); *McMahon* v. *United States*, 342 U. S. 25, 26–27 (1951) (the limitations period in the Suits in Admiralty Act runs from the date of injury rather than when plaintiffs may sue).

None of those decisions, however, addresses the critical aspect of this case: the parties have agreed by contract to commence the limitations period at a particular time. For that reason, we find more appropriate guidance in precedent confronting whether to enforce the terms of a contractual limitations provision. Those cases provide a well-established framework suitable for resolving the question in this case:

> "[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers of America* v. *Wolfe*, 331 U. S. 586, 608 (1947).

We have recognized that some statutes of limitations do not permit parties to choose a shorter period by contract.

See, *e.g., Louisiana & Western R. Co.* v. *Gardiner*, 273 U. S. 280, 284 (1927) (contractual provision requiring suit against common carrier within two years and one day after delivery was invalid under a federal statute "declar[ing] unlawful any limitation shorter than two years from the time notice is given of the disallowance of the claim"). The rule set forth in *Wolfe* recognizes, however, that other statutes of limitations provide only a default rule that permits parties to choose a shorter limitations period. See *Riddlesbarger* v. *Hartford Ins. Co.*, 7 Wall. 386, 390 (1869) (finding "nothing in th[e] language or object [of statutes of limitations] which inhibits parties from stipulating for a shorter period within which to assert their respective claims"); see also *Missouri, K. & T. R. Co.* v. *Harriman*, 227 U. S. 657, 672–673 (1913) (citing examples). If parties are permitted to contract around a default statute of limitations, it follows that the same rule applies where the statute creating the cause of action is silent regarding a limitations period.

The *Wolfe* rule necessarily allows parties to agree not only to the length of a limitations period but also to its commencement. The duration of a limitations period can be measured only by reference to its start date. Each is therefore an integral part of the limitations provision, and there is no basis for categorically preventing parties from agreeing on one aspect but not the other. See *Electrical Workers* v. *Robbins & Myers, Inc.*, 429 U. S. 229, 234 (1976) (noting that "the parties could conceivably have agreed to a contract" specifying the "'occurrence'" that commenced the statutory limitations period).

B

The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan. "The plan, in short, is at the center of ERISA." *US Airways, Inc.* v.

*McCutchen*, 569 U. S. ___, ___ (2013) (slip op., at 11). "[E]mployers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan* v. *Nord*, 538 U. S. 822, 833 (2003). And once a plan is established, the administrator's duty is to see that the plan is "maintained pursuant to [that] written instrument." 29 U. S. C. §1102(a)(1). This focus on the written terms of the plan is the linchpin of "a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Varity Corp.* v. *Howe*, 516 U. S. 489, 497 (1996).

Heimeshoff's cause of action for benefits is likewise bound up with the written instrument. ERISA §502(a)(1)(B) authorizes a plan participant to bring suit "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*." 29 U. S. C. §1132(a)(1)(B) (emphasis added). That "statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *CIGNA Corp.* v. *Amara*, 563 U. S. ___, ___ (2011) (slip op., at 13). For that reason, we have recognized the particular importance of enforcing plan terms as written in §502(a)(1)(B) claims. See *id.*, at ___ (slip op., at 13–14); *Conkright* v. *Frommert*, 559 U. S. 506, 512–513 (2010); *Kennedy* v. *Plan Administrator for DuPont Sav. and Investment Plan*, 555 U. S. 285, 299–301 (2009). Because the rights and duties at issue in this case are no less "built around reliance on the face of written plan documents," *Curtiss-Wright Corp.* v. *Schoonejongen*, 514 U. S. 73, 83 (1995), we will not presume from statutory silence that Congress intended a different approach here.

## III

We must give effect to the Plan's limitations provision

unless we determine either that the period is unreasonably short, or that a "controlling statute" prevents the limitations provision from taking effect. *Wolfe*, 331 U. S., at 608. Neither condition is met here.

### A

Neither Heimeshoff nor the United States claims that the Plan's 3-year limitations provision is unreasonably short on its face. And with good reason: the United States acknowledges that the regulations governing internal review mean for "mainstream" claims to be resolved in about one year, Tr. of Oral Arg. 22, leaving the participant with two years to file suit.[4] Even in this case, where the administrative review process required more time than usual, Heimeshoff was left with approximately one year in which to file suit. Heimeshoff does not dispute that a hypothetical 1-year limitations period commencing at the conclusion of internal review would be reasonable. *Id.*, at 4. We cannot fault a limitations provision that would leave the same amount of time in a case with an unusually long internal review process while providing for a significantly longer period in most cases.

Heimeshoff's reliance on *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U. S. 355 (1977), is therefore misplaced. There, we declined to enforce a State's 1-year statute of limitations as applied to Title VII employment discrimination actions where the limitations period commenced before accrual. We concluded that "[i]t would hardly be reasonable" to suppose that Congress intended to enforce state statutes of limitations as short as 12 months where

_____

[4] Heimeshoff, drawing on a study by the American Council of Life Insurers of recent §502(a)(1)(B) cases where timeliness was at issue, states that exhaustion can take 15 to 16 months in a typical case. Reply Brief 17–18, n. 3 (citing Brief for American Council of Life Insurers et al. as *Amici Curiae* 29). In our view, that still leaves ample time for filing suit.

the Equal Employment Opportunity Commission faced a backlog of 18 to 24 months, leaving claimants with little chance of bringing a claim *not* barred by the State's statute of limitations. *Id.,* at 369–371. In the absence of any evidence that there are similar obstacles to bringing a timely §502(a)(1)(B) claim, we conclude that the Plan's limitations provision is reasonable.

B

Heimeshoff and the United States contend that even if the Plan's limitations provision is reasonable, ERISA is a "controlling statute to the contrary." *Wolfe, supra,* at 608. But they do not contend that ERISA's statute of limitations for claims of breach of fiduciary duty controls this action to recover benefits. See 29 U. S. C. §1113. Nor do they claim that ERISA's text or regulations contradict the Plan's limitations provision. Rather, they assert that the limitations provision will "undermine" ERISA's two-tiered remedial scheme. Brief for Petitioner 39; Brief for United States as *Amicus Curiae* 19. We cannot agree.

1

The first tier of ERISA's remedial scheme is the internal review process required for all ERISA disability-benefit plans. 29 CFR §2560.503–1. After the participant files a claim for disability benefits, the plan has 45 days to make an "adverse benefit determination." §2560.503–1(f)(3). Two 30-day extensions are available for "matters beyond the control of the plan," giving the plan a total of up to 105 days to make that determination. *Ibid.* The plan's time for making a benefit determination may be tolled "due to a claimant's failure to submit information necessary to decide a claim." §2560.503–1(f)(4).

Following denial, the plan must provide the participant with "at least 180 days . . . within which to appeal the determination." §§2560.503–1(h)(3)(i), (h)(4). The plan

has 45 days to resolve that appeal, with one 45-day extension available for "special circumstances (such as the need to hold a hearing)." §§2560.503–1(i)(1)(i), (i)(3)(i). The plan's time for resolving an appeal can be tolled again if the participant fails to submit necessary information. §2560.503–1(i)(4). In the ordinary course, the regulations contemplate an internal review process lasting about one year. Tr. of Oral Arg. 22. If the plan fails to meet its own deadlines under these procedures, the participant "shall be deemed to have exhausted the administrative remedies." §2560.503–1(l). Upon exhaustion of the internal review process, the participant is entitled to proceed immediately to judicial review, the second tier of ERISA's remedial scheme.

2

Heimeshoff and the United States first claim that the Plan's limitations provision will undermine the foregoing internal review process. They contend that participants will shortchange their own rights during that process in order to have more time in which to seek judicial review. Their premise—that participants will sacrifice the benefits of internal review to preserve additional time for filing suit—is highly dubious in light of the consequences of that course of action.

First, to the extent participants fail to develop evidence during internal review, they risk forfeiting the use of that evidence in district court. The Courts of Appeals have generally limited the record for judicial review to the administrative record compiled during internal review. See, *e.g., Foster* v. *PPG Industries, Inc.*, 693 F. 3d 1226, 1231 (CA10 2012); *Fleisher* v. *Standard Ins. Co.*, 679 F. 3d 116, 121 (CA3 2012); *McCartha* v. *National City Corp.*, 419 F. 3d 437, 441 (CA6 2005). Second, participants are not likely to value judicial review of plan determinations over internal review. Many plans (including this Plan)

vest discretion over benefits determinations in plan administrators. See *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101, 111–112 (1989) (permitting the vesting of discretion); see also App. in No. 12–651–cv (CA2), p. 34. Courts ordinarily review determinations by such plans only for abuse of discretion. *Metropolitan Life Ins. Co.* v. *Glenn*, 554 U. S. 105, 115–116 (2008). In short, participants have much to lose and little to gain by giving up the full measure of internal review in favor of marginal extra time to seek judicial review.

3

Heimeshoff and the United States next warn that it will endanger judicial review to allow plans to set limitations periods that begin to run before internal review is complete. The United States suggests that administrators may attempt to prevent judicial review by delaying the resolution of claims in bad faith. Brief for United States as *Amicus Curiae* 19; see also *White*, 488 F. 3d, at 247–248. But administrators are required by the regulations governing the internal review process to take prompt action, see *supra,* at 10–11, and the penalty for failure to meet those deadlines is immediate access to judicial review for the participant. 29 CFR §2560.503–1(l). In addition, that sort of dilatory behavior may implicate one of the traditional defenses to a statute of limitations. See *infra,* at 14–15.

The United States suggests that even good-faith administration of internal review will significantly diminish the availability of judicial review if this limitations provision is enforced. Forty years of ERISA administration suggest otherwise. The limitations provision at issue is quite common; the vast majority of States require certain insurance policies to include 3-year limitations periods that run

from the date proof of loss is due.[5] But there is no significant evidence that limitations provisions like the one here have similarly thwarted judicial review. As explained above, see *supra,* at 10–11, ERISA regulations structure internal review to proceed in an expeditious manner. It stands to reason that the cases in which internal review leaves participants with less than one year to file suit are rare. Heimeshoff identifies only a handful of cases in which §502(a)(1)(B) plaintiffs are actually time barred as a result of this 3-year limitations provision. See *Abena* v. *Metropolitan Life Ins. Co.,* 544 F. 3d 880 (CA7 2008); *Touqan* v. *Metropolitan Life Ins. Co.,* 2012 WL 3465493

—————

[5] See Ala. Code §§27–19–14, 27–20–5(7) (2007); Alaska Stat. §21.54.030(7) (2012); Ark. Code Ann. §§23–85–116, 23–86–102(c)(7) (2004); Cal. Ins. Code Ann. §10350.11 (West 2013); Colo. Rev. Stat. Ann. §10–16–202(12) (2013); Conn. Gen. Stat. §38a–483(a)(11) (2012); Del. Code Ann., Tit. 18, §§3315, 3541(7) (1999); Ga. Code Ann. §33–29–3(b)(11) (2013); Haw. Rev. Stat. §431:10A–105(11) (Cum. Supp. 2012); Idaho Code §§41–2115, 41–2207(7) (Lexis 2010); Ill. Comp. Stat., ch. 215, §5/357.12 (West 2012); Ind. Code §27–8–5–3(a)(11) (2004); Iowa Code §514A.3(1)(*k*) (2008); Ky. Rev. Stat. Ann. §§304.17–150, 304.18–070(7) (West 2012); Me. Rev. Stat. Ann., Tit. 24–A, §2715 (2000); Mass. Gen. Laws, ch. 175, §108(3)(a)(11) (West 2011); Mich. Comp. Laws §500.3422 (2002); Minn. Stat. §62A.04(2)(11) (2012); Miss. Code Ann. §83–9–5(1)(k) (2011); Mo. Rev. Stat. §376.777(1)(11) (2000); Mont. Code Ann. §33–22–602(7) (2013); Neb. Rev. Stat. §44–710.03(11) (2010); Nev. Rev. Stat. §§689A.150, 689B.080(9) (2011); N. H. Rev. Stat. Ann. §415:6(I)(11) (West Supp. 2012); N. J. Stat. Ann. §17B:26–14 (West 2006); N. M. Stat. Ann. §59A–22–14 (2013); N. Y. Ins. Law §3216(d)(1)(K) (West Supp. 2013); N. C. Gen. Stat. Ann. §58–51–15(a)(11) (Lexis 2011); N. D. Cent. Code Ann. §26.1–36–05(14) (Lexis 2010); Ohio Rev. Code Ann. §3923.04(K) (Lexis 2010); Okla. Stat., Tit. 36, §4405(A)(11) (West 2011); Ore. Rev. Stat. §743.441 (2011); 40 Pa. Cons. Stat. §753(A)(11) (1999); R. I. Gen. Laws §27–18–3(a)(11) (Lexis 2008); S. D. Codified Laws §58–18–27 (2004); Tenn. Code Ann. §56–26–108(11) (2008); Tex. Ins. Code Ann. §1201.217 (West Supp. 2012); Vt. Stat. Ann., Tit. 8, §4065(11) (2009); Va. Code Ann. §38.2–3540 (Lexis 2007); Wash. Rev. Code §48.20.142 (2012); W. Va. Code Ann. §33–15–4(k) (Lexis 2011); Wyo. Stat. Ann. §§26–18–115, 26–19–107(a)(vii) (2013).

(ED Mich., Aug. 14, 2012); *Smith* v. *Unum Provident*, 2012 WL 1436458 (WD Ky., Apr. 24, 2012); *Fry* v. *Hartford Ins. Co.*, 2011 WL 1672474 (WDNY, May 3, 2011); *Rotondi* v. *Hartford Life & Acc. Group*, 2010 WL 3720830 (SDNY, Sept. 22, 2010). Those cases suggest that this barrier falls on participants who have not diligently pursued their rights. See *Abena, supra*, at 884 (by his own admission, there was "no reason" plaintiff could not have filed suit during the remaining seven months of limitations period); *Smith*, *supra,* at \*2 (plaintiff filed suit four years after the limitations period expired, and six years after final denial); *Rotondi*, *supra*, at \*8 ("Application of the . . . limitations period works no unfairness here"); see also *Rice*, 578 F. 3d, at 457 (the participant "has not established that he has been diligently pursuing his rights" and "has given no reason for his late filing"); *Burke*, 572 F. 3d, at 81 (following exhaustion, "two years and five months of the limitations period remained"); *Salerno* v. *Prudential Ins. Co. of America*, 2009 WL 2412732, \*6 (NDNY, Aug. 3, 2009) ("Plaintiff's proof of loss was untimely by over ten years"). The evidence that this 3-year limitations provision harms diligent participants is far too insubstantial to set aside the plain terms of the contract.

Moreover, even in the rare cases where internal review prevents participants from bringing §502(a)(1)(B) actions within the contractual period, courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed. If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense. See, *e.g., Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287, 298–299 (1890); *LaMantia* v. *Voluntary Plan Adm'rs, Inc.*, 401 F. 3d 1114, 1119 (CA9 2005). To the extent the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by ex-

traordinary circumstances, equitable tolling may apply. *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95 (1990) (limitations defenses "in lawsuits between private litigants are customarily subject to 'equitable tolling'").[6] Finally, in addition to those traditional remedies, plans that offer appeals or dispute resolution beyond what is contemplated in the internal review regulations must agree to toll the limitations provision during that time. 29 CFR §2560.503–1(c)(3)(ii). Thus, we are not persuaded that the Plan's limitations provision is inconsistent with ERISA.

## C

Two additional arguments warrant mention. First, Heimeshoff argues—for the first time in this litigation— that the limitations period should be tolled as a matter of course during internal review. By effectively delaying the commencement of the limitations period until the conclusion of internal review, however, this approach reconstitutes the contractual revision we declined to make. As we explained, the parties' agreement should be enforced unless the limitations period is unreasonably short or foreclosed by ERISA. The limitations period here is neither. See *supra,* at 9–10, 11–14, and this page.

Nor do the ERISA regulations require tolling during internal review. A plan must agree to toll the limitations provision only in one particular circumstance: when a plan offers voluntary internal appeals beyond what is permitted by regulation. §2560.503–1(c)(3)(ii). Even then, the limitations period is tolled only during that specific portion of internal review. This limited tolling requirement would be superfluous if the regulations contemplated tolling throughout the process.

―――――――――

[6] Whether the Court of Appeals properly declined to apply those doctrines in this case is not before us. 569 U. S. \_\_\_, \_\_\_ (2013); Pet. for Cert. i.

Finally, relying on our decision in *Hardin* v. *Straub*, 490 U. S. 536 (1989), Heimeshoff contends that we must inquire whether state law would toll the limitations period throughout the exhaustion process. In *Hardin*, we interpreted 42 U. S. C. §1983 to borrow a State's statutory limitations period. We recognized that when a federal statute is deemed to borrow a State's limitations period, the State's tolling rules are ordinarily borrowed as well because "'[i]n virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling . . . .'" 490 U. S., at 539 (quoting *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 464 (1975)); see also *Board of Regents of Univ. of State of N. Y.* v. *Tomanio*, 446 U. S. 478, 484 (1980) (in §1983 actions "a state statute of limitations and the coordinate tolling rules" are "binding rules of law"). But here, unlike in *Hardin*, the parties have adopted a limitations period by contract. Under these circumstances, where there is no need to borrow a state statute of limitations there is no need to borrow concomitant state tolling rules.

## IV

We hold that the Plan's limitations provision is enforceable. The judgment is, accordingly, affirmed.

*It is so ordered.*