[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14565
_____

D.C. Docket No. 1:15-cv-02508-TWT


MELINDA WEBB,

Plaintiff-Appellant,

versus

LIBERTY MUTUAL INSURANCE COMPANY,

Defendant,

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 25, 2017)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

MARTIN, Circuit Judge:

Melinda Webb brought suit against Liberty Life Assurance Company of Boston ("Liberty") seeking to recover optional life insurance benefits and an accidental death insurance benefit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001.  The District Court granted Liberty summary judgment after finding the action was not within the contractual limitations period.  After careful review, we vacate the District Court's order and remand for the court to decide in the first instance the factual question of whether Ms. Webb reasonably relied upon Liberty's statement that "further review will be conducted."

## I.

On December 27, 2013, Ronald Webb sustained a gunshot wound to the head in the home he and Ms. Webb shared.  Ms. Webb was home at the time of the incident, and immediately called the police.  Mr. Webb was transported to a hospital, where he died later that night.  The coroner concluded Mr. Webb's death was a result of suicide.

Mr. Webb was an employee of Adobe Systems Incorporated ("Adobe"). Through Adobe, Mr. Webb enrolled in coverage under a life insurance and accidental death benefits plan in compliance with the ERISA.  Mr. Webb's coverage included basic life insurance of $250,000; optional life insurance of $1 million; basic accidental death insurance of $250,000; and optional accidental

2

death insurance of $1 million.  Ms. Webb was a beneficiary under each of these policies.

On December 28, 2013, Adobe emailed Liberty that Mr. Webb had died. Adobe then sent Liberty a completed Employee Proof of Death form on December 30, 2013.  On January 2, 2014, Liberty's claims examiner spoke to Ms. Webb and informed her that because Mr. Webb's death had been ruled a suicide, Liberty would not pay the optional life insurance benefits or accidental death benefit.  On January 6, 2014, Liberty sent Ms. Webb a claim form and asked for a copy of Mr. Webb's death certificate.  Ms. Webb provided this additional information required for proof of loss to Liberty on January 24, 2014.  Liberty then sent Ms. Webb a letter on January 27, 2014, informing her she would receive basic life insurance benefits.  The letter included a check for that sum plus interest.  It also explained again that she would not receive the optional benefits, and that she had the right to appeal the decision under the ERISA.

On March 26, 2014, Ms. Webb asked Liberty to review its decision.  After review, Liberty did not change its decision, and sent another letter to Ms. Webb to tell her this on June 23, 2014.  However, Liberty's June 23 letter said: "At this time, the appeal process has been exhausted and further review will be conducted by Liberty."  On May 5, 2015, Ms. Webb's lawyer sent Liberty a letter inquiring about this further review and providing additional evidence to support Ms. Webb's

claim that the death was not suicide, but instead accidental. Ten days later, on May 15, 2015, Liberty responded, thanking Ms. Webb's attorney for "pointing out the typo in [its] letter." Liberty said it had meant no further review would be conducted.

Ms. Webb then filed this action on June 12, 2015. Liberty removed the case to federal court and moved for summary judgment based on contractual time limitations in the policy and based on the administrative record. The District Court granted summary judgment in favor of Liberty based on the contractual limitations period of Mr. Webb's policy. The court did not rule on the administrative record because it was not necessary in light of the grant of summary judgment.

## II.

We review de novo the grant of summary judgment. Byars v. Coca-Cola Co., 517 F.3d 1256, 1263 (11th Cir. 2008). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]

This Court has held "contractual limitations periods on ERISA actions are enforceable, regardless of state law, provided they are reasonable." Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan, 160 F.3d 1301, 1303

---

[1] Liberty argues the standard of review for summary judgment is different in ERISA cases. Liberty points to no binding precedent from this Court to support this claim, and in any event, the cases Liberty cites show this only for ERISA benefit denial cases reviewing an administrator's denial, not cases interpreting a contract.

(11th Cir. 1998); see also Heimeshoff v. Hartford Life & Accident Ins. Co., 571

U.S. ___, 134 S. Ct. 604, 611–12 (2013) ("The principle that contractual

limitations provisions ordinarily should be enforced as written is especially

appropriate when enforcing an ERISA plan.").

Liberty's Group Life Insurance Policy (the "Policy") contains two relevant

provisions.  First, the Policy sets a time limit after which lawsuits cannot be

brought:

> **Legal Proceedings**
> A claimant or the claimant's authorized representative cannot start
> any legal action:
> . . .
> 2. more than one year after the time Proof of claim is required.

Second, the Policy defines when Proof of claim is required:

> **Proof**
> a. Satisfactory Proof of loss must be given to Liberty no later than 30
> days after the date of loss.
> b. Failure to furnish such Proof within such time shall not invalidate
> or reduce any claim if it was not reasonably possible to furnish such
> Proof within such time.  Such Proof must be furnished as soon as
> reasonably possible, and in no event, except in the absence of legal
> capacity of the claimant, later than one year from the time Proof is
> otherwise required.

The District Court construed this language to mean a claimant ordinarily has

thirty days to furnish proof of loss, and then one year after that to bring suit—

resulting in a total contractual limitations period of one year and thirty days.  The

court said when "proof cannot reasonably be furnished within 30 days, [then] an

5

additional year would be added to the contractual limitations period." Because Ms. Webb submitted proof within thirty days, the District Court concluded her contractual limitations period was one year and thirty days instead of two years and thirty days. Therefore, the District Court found her suit barred by the contract's limitations period and granted summary judgment in favor of Liberty.

On appeal, Ms. Webb argues her action was timely filed because the District Court erred in its interpretation of the contractual limitations period. She says at the very least, the Policy is ambiguous and should therefore be construed against the drafter, Liberty. Alternatively, Ms. Webb argues that if this Court agrees with the District Court's interpretation of the contractual limitations period, that period was unreasonable.

### A.

Ms. Webb first argues the District Court erred by interpreting the term "required" to change its meaning based on when proof of loss is filed. She says, under the Policy, proof is not absolutely required until one year and thirty days. Therefore, Ms. Webb asserts the contractual time limit is one year after that (a total of two years and thirty days) for all claimants. She points to Harrison v. Liberty Life Assurance Co. of Boston, No. 5:11-cv-60, 2011 WL 2118954 (N.D. Fla. May 7, 2011), for support of her interpretation. At the very least, Ms. Webb says, the Policy is ambiguous on this point and should be construed against Liberty.

6

This Court interprets ERISA contracts, like the Policy, according to federal common law. Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan, 833 F.3d 1299, 1306–07 (11th Cir. 2016). "We first look to the plain and ordinary meaning of the policy terms to interpret the contract." Id. at 1307. When a term is ambiguous—that is, it is "susceptible to two or more reasonable interpretations that can be fairly made"—we "construe any ambiguities against the drafter." Id.

Because Ms. Webb filed sufficient proof of loss on January 24, 2014, within thirty days of the loss on December 27, 2013, the thirty-day provision for when proof was required under the Policy applied. The additional-year provision that Ms. Webb seeks to apply goes only to claims for which proof of loss could not be filed within thirty days. By the Policy's own terms, this additional year is reserved exclusively for instances in which "it was not reasonably possible to furnish such Proof" within thirty days. That was not the case here. Not only was it possible for Ms. Webb to furnish sufficient proof of loss within thirty days, but she actually did.

This interpretation of the Policy follows its plain language to determine when proof of loss is required based on when that proof can reasonably be furnished. And this interpretation does not conflict with Harrison, which arrived at the same conclusion. Notably, the District Court in Ms. Webb's case adopted Harrison's reasoning. See Harrison, 2011 WL 2118954, at *2 (finding the extra

year applied only "[i]n certain circumstances [where] the policy grants additional time . . . if it is not 'reasonably possibl[e]' to meet . . . . the normal [thirty-day] requirement"). As a result, the Policy's plain meaning was not ambiguous and Ms. Webb brought her action after its contractual limitations period.

### B.

Next, Ms. Webb says the Policy's limitations period is unreasonable and fundamentally unfair. She points out that Liberty did not tell her it was no longer conducting review until May 15, 2015—four months after the contractual limitations period expired.

Liberty says Ms. Webb had seven months to bring her suit after Liberty upheld its decision to deny optional benefits on June 23, 2014. Liberty argues Ms. Webb was mistaken, and that "this is not a case in which Liberty's conduct prevented Webb from filing suit." And in any event, it says, because Ms. Webb "did not diligently pursue her claim" by following up about the typo, she should be time barred from bringing suit.

This Court has not established a clear test for whether a contractual limitations period under ERISA is reasonable, but instead has relied on several instructive factors. In Northlake, this Court looked to (1) whether there was any "subterfuge" to prevent lawsuits; (2) whether the limitations period was commensurate with other provisions in the plan that are designed to process claims

with dispatch; and (3) whether an ERISA-required internal appeals process was completed.  160 F.3d at 1304.  In analyzing the second factor, this Court stressed the importance of the plan provider completing review with ample time left for the claimant to file suit.  See id.; see also Heimeshoff, 134 S. Ct. at 612–13 (noting the importance of time "in which to file suit" after the end of the ERISA internal review process when evaluating whether a limitations period is reasonable).

Applying this precedent, we conclude the contractual limitations period would be unreasonable in Ms. Webb's case if Ms. Webb reasonably relied upon Liberty's written statement that it was conducting further review.  If Ms. Webb believed the administrative review process was incomplete based on Liberty's statement, and if an objectively reasonable person in her place would have believed as much, the limitations period in this case would be unreasonable because Ms. Webb could not bring suit until the administrative review process finished.  See Heimeshoff, 134 S. Ct. at 612–13; Northlake, 160 F.3d at 1304.

Ms. Webb argues that she did, in fact, reasonably rely upon this statement.  She points out that she retained new counsel and conducted further investigation to produce evidence to support her claim.  And once Liberty told Ms. Webb that its letter stating it would be undertaking further review was a typo, she filed suit within thirty days.  On the other hand, Liberty argues Ms. Webb did not reasonably rely upon its statement.  It says Ms. Webb did not diligently pursue her claim

9

because she did not communicate with the insurance company until May 5, 2015, which was after the limitations period had expired.  Because this is a factual question the District Court did not evaluate, we vacate the District Court's order and remand for the court to make this determination in the first instance.  See, e.g., Williams v. Wright, 927 F.2d 1540, 1551 (11th Cir. 1991) ("These factual issues were not addressed by the district court, and we therefore decline to address them here, preferring that they be addressed in the first instance by the district court.").[2]

**VACATED AND REMANDED.**

---

[2] Liberty asks us to look beyond the District Court's reason for granting summary judgment and evaluate its benefits denial decision based on the administrative record.  However, the District Court's order evaluated only the contractual limitations period and not the administrative record.  We also remand for the District Court to evaluate the administrative record in the first instance, if necessary.