**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-2406**

───────────

KATHY HAYES,

Plaintiff – Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Defendant – Appellee.

───────────

Appeal from the United States District Court for the District of South Carolina, at Greenville. Joseph Dawson, III, District Judge. (6:19-cv-00495-JD)

───────────

Argued: December 8, 2022                      Decided: February 23, 2023

───────────

Before WILKINSON and HEYTENS, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────

Affirmed by published opinion. Judge Heytens wrote the opinion, in which Judge Wilkinson and Judge Hudson joined.

───────────

**ARGUED:** M. Leila Louzri, FOSTER LAW FIRM, LLC, Greenville, South Carolina, for Appellant. Ian H. Morrison, SEYFARTH SHAW, LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Nathaniel W. Bax, FOSTER LAW FIRM, LLC, Greenville, South Carolina, for Appellant.

───────────

TOBY HEYTENS, Circuit Judge:

When Anthony Hayes' employment ended, so did his employer-provided life insurance. Hayes then missed the deadline to convert his coverage to an individual policy. After Hayes died, his surviving spouse filed suit seeking relief under a provision of the Employee Retirement Income Security Act allowing "a participant or beneficiary" of an employee benefit plan "to recover benefits due" "under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B). We agree with the district court that the plan administrator did not abuse its discretion in concluding Hayes was not entitled to benefits under the terms of the plan. We thus affirm.

I.

Hayes worked as an environmental engineer for DSM North America, Inc., and had an employer-provided life insurance policy with defendant Prudential Insurance Company. Prudential was both the insurer and the administrator of the employer-provided benefit plan. The plan gave Prudential "the sole discretion to interpret [the plan's] terms . . . and to determine eligibility for benefits." JA 97.

In 2015, Hayes lost his job because of medical issues, and his employer-provided life insurance coverage ended. The terms of the plan, however, allowed former employees to convert employer-provided coverage to an individual policy. To do so, the plan required Hayes to initiate the conversion process "by the later of" 31 days after his employer-provided coverage ended or 15 days after receiving "written notice of the conversion privilege." JA 64. The parties agree Hayes' conversion deadline was December 23, 2015.

2

Unfortunately, Hayes did not contact Prudential about converting his life insurance policy until 26 days after the conversion deadline. Hayes' health continued to deteriorate, and he died in June 2016.

This case arises out of an attempt by Hayes' surviving spouse—the plaintiff here—to collect benefits under Hayes' employer-provided life insurance policy. Plaintiff submitted a request for benefits, which Prudential denied. The claim administrator explained Hayes' employer-provided "coverage terminated on 11/16/15," and although Hayes "was eligible to convert his Group Basic Life Insurance," "there is no conversion policy on file." JA 144. Plaintiff sought reconsideration from Prudential's internal appeals committee, which confirmed the denial of benefits. Prudential's letter of reconsideration acknowledged that "medical records do support" the conclusion that "Hayes was incapacitated due to his medical conditions and symptoms during the time period he had to convert his coverage." JA 177. But, the letter explained, "Prudential is required to administer claims made under the plan in strict adherence to the policy provisions." *Id.*

Although Prudential offered another layer of "voluntary" internal review, JA 178, plaintiff chose not to pursue it. Instead, plaintiff sued Prudential in federal district court. Plaintiff's single-count complaint requested one form of substantive relief: for the district court to "declare, pursuant to 29 U.S.C. § 1132(a)(1)(B), that [p]laintiff is entitled to the benefits which she seeks under the terms of the plan." JA 6.

The parties submitted a joint stipulation of facts and an administrative record, and cross-moved for judgment based on those undisputed materials. The district court entered judgment for Prudential. The court concluded Prudential "reasonably denied [p]laintiff's

3

request for benefits" because "Hayes received timely notice of his conversion rights" and "did not convert his life insurance to an individual policy during the [c]onversion [p]eriod." JA 294. The district court also rejected plaintiff's request to "apply the doctrine of equitable tolling and find that [p]laintiff is entitled to the life insurance [b]enefits she seeks." JA 295. The court noted that a different statutory provision—29 U.S.C. § 1132(a)(3)—"provides that plan beneficiaries can seek, and the [c]ourt can grant, 'other appropriate equitable relief.'" *Id.* But the court emphasized plaintiff had not sued under that provision, "never sought leave to amend her [c]omplaint[,] and in fact ha[d] stipulated that her claim involves only a claim for benefits pursuant to § 1132(a)(1)(B)." *Id.*

Because the plan gave Prudential discretion in construing its terms and determining eligibility for benefits, we—like the district court—review Prudential's denial of benefits for abuse of discretion. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). "The abuse-of-discretion standard is a deferential one and the decision of the plan trustees will not be disturbed if it is reasonable, even if we would have come to a different conclusion independently." *Garner v. Central States, Se. & Sw. Areas Health & Welfare Fund Active Plan*, 31 F.4th 854, 858 (4th Cir. 2022) (quotation marks omitted).[1]

---

[1] This Court recently clarified two points about judicial review in the ERISA context. *First*, the Court rejected use of "an ERISA-specific quasi-summary-judgment procedure," emphasizing that, "as in any other context, district courts should employ the appropriate procedural mechanism for resolving the case before them as defined by the Federal Rules of Civil Procedure." *Tekmen v. Reliance Std. Life Ins. Co.*, 55 F.4th 951, 959, 961 (4th Cir. 2022). *Second*, the Court held that if a district court makes any "factual findings" in resolving an ERISA dispute, those findings are—as in any other context—reviewed only for clear error. *Id.* at 962 (emphasis omitted).

4

II.

ERISA regulates employee benefit plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of [those] plans, and by providing for appropriate remedies, sanctions, and ready access to the [f]ederal courts." 29 U.S.C. § 1001(b). The statute reflects an attempt to balance two competing goals—"offer[ing] employees enhanced protection for their benefits" without "creat[ing] a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). In service of those aims, ERISA creates a wide range of public and private enforcement mechanisms. See generally 29 U.S.C. § 1132.

A.

Plaintiff sued exclusively under 29 U.S.C. § 1132(a)(1)(B), which we will call Subsection (a)(1)(B). In relevant part, that provision reads:

> A civil action may be brought . . . by a . . . beneficiary . . . to recover benefits due . . . under the terms of [the] plan[.]

29 U.S.C. § 1132(a)(1)(B).

---

Despite postdating the district court's decision, we conclude *Tekmen* does not require a remand for further proceedings. For one thing, neither party asks us to do so. In addition, because the district court decided this case based on stipulated facts, its decision can properly be viewed as a grant of summary judgment—a matter we review de novo. See *Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013) (court considering summary judgment motion may consider "stipulations"). Finally, *Tekmen* "express[ed] no view on the appropriate procedural mechanism for resolving cases" like this one—those "in which review in the district court is for abuse of discretion." 55 F.4th at 961 n.5. We note, however, that the district court may need to revisit its specialized case management order for ERISA cases given *Tekmen*.

Because Subsection (a)(1)(B) allows suits to recover benefits owed under "the terms of the plan," it does not permit "a court to alter those terms." *CIGNA Corp. v. Amara*, 563 U.S. 421, 435–36 (2011). As the Supreme Court has explained, "[t]he statutory language speaks of *enforcing* the terms of the plan, not of *changing* them." *Id.* at 436 (alterations and quotation marks omitted). Subsection (a)(1)(B) thus does not allow a "change, akin to the reform of a contract," because doing so "seems less like the simple enforcement of a contract as written and more like an equitable remedy." *Id.*

The trouble for plaintiff is unfortunate, but simple. As plaintiff admits, Hayes "failed to convert his life insurance coverage in the time set forth in the policy." Hayes Br. 24. Awarding benefits would thus require the very step the Supreme Court said Subsection (a)(1)(B) does not permit: modifying the plan's terms to provide a workaround to its conversion deadline. See *Varity Corp.*, 516 U.S. at 492, 494–95, 515 (former employees who were misled into switching to a less generous plan "could not proceed under [Subsection (a)(1)(B)] because they were no longer members of the [ERISA] plan and, therefore, had no benefits due . . . under the terms of the plan" (alterations and quotation marks omitted)).

Plaintiff counters she "is not asserting that the plan terms should be rewritten." Hayes Reply Br. 5. Instead, she "is asking the Court to apply the doctrine of equitable tolling to allow for an exception to the life insurance conversion deadline set forth in the policy" because Hayes was incapacitated during the conversion period. *Id.* at 6.

No matter how plaintiff's argument is characterized, we conclude the plan administrator did not abuse its discretion in deciding "the terms of the plan" do not provide

6

for equitable tolling. *CIGNA Corp.*, 563 U.S. at 435. To be sure, federal courts generally apply a "presumption that federal *statutes of limitations* can be equitably tolled." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 13 (2014) (emphasis added). But that is not because courts have freewheeling authority to allow equitable tolling whenever they think it makes sense; rather, it reflects a prediction about legislative intent. In short, "Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law." *Id.* at 11. For that reason, the Supreme Court has emphasized the presumption in favor of equitable tolling applies "only" to time periods that "operate as a statute of limitations." *Id.* at 13–14; see *Arellano v. McDonough*, 143 S. Ct. 543, 548 (2023) (quoting *Lozano* for the proposition that the presumption in favor of equitable tolling has "only" been applied "to statutes of limitations").

The Supreme Court's decision in *Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014)—which held equitable tolling cannot extend the one-year period to petition for the return of a child under the Hague Convention on the Civil Aspects of International Child Abduction—is instructive. At first blush, an international treaty addressing child abduction may seem like an odd comparator to ERISA. But much like an ERISA plan, "[a] treaty is in its nature a contract," and "background principle[s]" of statutory interpretation like equitable tolling have "no proper role in the interpretation of" contracts "unless that principle is shared by the parties." *Id.* at 12 (quotation marks omitted). And here, the contract gives the plan administrator—not courts—primacy in interpreting the plan's terms. Cf. *Arellano*, 143 S. Ct. at 548 n.1 (describing equitable tolling as "a judicial doctrine" that "is typically applied by courts").

7

As in *Lozano*, "[i]t does not matter" that Congress enacted a statute—here, ERISA—to enable courts to help "implement" the agreement. 572 U.S. at 13. Like the legislation implementing the Hague Convention, Subsection (a)(1)(B) neither "address[es] the availability of equitable tolling," "[n]or does it purport to alter the" terms of any ERISA plan. *Id.* For that reason, we are "unwilling to apply equitable tolling principles that would, in practice, rewrite the" plan. *Id.* at 17.

To be sure, both the Supreme Court and this one have suggested equitable tolling may be available for deadlines in ERISA plans involving the time to file a lawsuit or appeal the denial of benefits. In *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 571 U.S. 99 (2013), for example, the Supreme Court said "equitable tolling may apply" if a participant "has diligently pursued both internal review and judicial review but was prevented from filing suit [within the specified period] by extraordinary circumstances." *Id.* at 114. Similarly, in *Gayle v. United Parcel Service, Inc.*, 401 F.3d 222 (4th Cir. 2005), this Court stated equitable tolling may be available to delay the deadlines for pursuing internal plan remedies that must be "pursu[ed] and exhaust[ed] . . . before gaining access to the federal courts." *Id.* at 226. As in *Heimeshoff*, however, the basis for this conclusion was that, under the statutory and regulatory scheme, "internal appeal limitations periods in ERISA plans are to be followed *just as ordinary statutes of limitations*." *Id.* (emphasis added).

The life insurance conversion deadline at issue here is not a statute of limitations, nor does it operate as one. "Statutes of limitations establish the period of time within which a claimant must bring an action." *Heimeshoff*, 571 U.S. at 105. "As a general matter, a

8

statute of limitations begins to run when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief." *Id.* (quotation marks omitted). The reason a plan's internal appeal deadline operates as a statute of limitations (the issue in *Gayle*) is because "the internal review process" is "[t]he first tier of ERISA's remedial scheme," which requires exhausting a claim to the plan administrator before "judicial review, the second tier of ERISA's remedial scheme." *Id.* at 110–11.

In contrast, no cause of action for benefits accrues when a participant misses a conversion deadline. Indeed, a participant whose policy has expired, unconverted, has no benefits due under the plan for any later occurrence because that participant lacks coverage. For that reason, a conversion deadline is even more removed from a statute of limitations than a pre-suit notice period, which the Supreme Court already held is not subject to equitable tolling. See *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 27 (1989). The Court's rationale for that conclusion is directly on point: Like a pre-suit notice period—and "[u]nlike a statute of limitations"—a deadline for converting benefits "is not triggered by the violation giving rise to the action." *Id.*

Plaintiff cites various nonbinding decisions for the view that equitable tolling is "consistent with the purpose and intent of ERISA." Hayes Br. 27. But a court's determination that certain relief is consistent with the purpose of a statute does not mean the court can necessarily provide it. In addition, plaintiff's statutory purpose argument only tells part of the story. Although "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans," it does so by "protect[ing] *contractually defined* benefits." *Firestone Tire*, 489 U.S. at 113 (quotation marks omitted; emphasis

9

added). "This focus on the written terms of the plan is the linchpin of a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place." *Heimeshoff*, 571 U.S. at 108 (alterations and quotation marks omitted). So even if consistency with statutory purpose were sufficient justification for a court to employ equitable tolling, there is no clear consistency here. We thus hold the district court did not err in concluding plaintiff's claim under Subsection (a)(1)(B) fails as a matter of law.[2]

## B.

As the district court noted, ERISA contains another provision that sometimes allows courts to go beyond "enforc[ing] contracts as written." *CIGNA Corp.*, 563 U.S. at 440. That provision is 29 U.S.C. § 1132(a)(3), which we will call Subsection (a)(3). Subsection (a)(3) permits a plan participant or beneficiary to bring suit "to enjoin any act or practice which violates any provision of this subchapter" or "to obtain other appropriate equitable relief [ ] to redress such violations." This language allows district courts to grant "those categories of relief that . . . were *typically* available in equity," including the ability "to reform contracts" by altering "the terms of the plan." *CIGNA Corp.*, 563 U.S. at 439–40 (quotation marks omitted).

We need not decide whether plaintiff could have obtained relief under Subsection (a)(3) because plaintiff did not sue under that provision, never sought leave to

---

[2] Despite broadly preempting state laws "relat[ing] to any employee benefit plan," 29 U.S.C. § 1144(a), ERISA contains an exception for laws "regulat[ing] insurance," § 1144(b)(2)(A). Because plaintiff does not argue any state law regulating insurance permits equitable tolling of the plan's conversion period, we do not explore the matter.

amend her complaint to add such a claim, and continues to disclaim reliance on any such a theory before this Court. We note, however, that plaintiff errs in asserting she could not have sought relief under Subsection (a)(3). True, a plaintiff who prevails in a claim for benefits under Subsection (a)(1)(B) may not *also* obtain other relief under Subsection (a)(3). See *Varity Corp.*, 516 U.S. at 512–15; *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 102–03 (4th Cir. 2006). But Federal Rule of Civil Procedure 8(a)(3) specifically permits pleading "in the alternative," so nothing would have prevented plaintiff from suing under both provisions.

*        *        *

"Employers have large leeway to design [employee benefit] plans as they see fit," but "once a plan is established, the administrator's duty is to see that the plan is maintained pursuant to that written instrument." *Heimeshoff*, 571 U.S. at 108 (alterations and quotation marks omitted). Prudential did not abuse its discretion by fulfilling its duty here, and the district court correctly resolved the single claim before it based on the agreed-on facts and consistent with well-established law. The judgment of the district court is thus

*AFFIRMED*.

11