RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BARBRIE LOGAN,

     *Plaintiff-Appellant*,

 *v.*

             No. 18-1381

MGM GRAND DETROIT CASINO,

     *Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:16-cv-10585—Linda V. Parker, District Judge.

Argued:  March 21, 2019

Decided and Filed:  September 25, 2019

Before:  BOGGS, GIBBONS and BUSH, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Kevin M. Carlson, Plymouth, Michigan, for Appellant.  Joseph E. Richotte, BUTZEL LONG, P.C., Bloomfield Hills, Michigan, for Appellee.  Jennifer S. Goldstein, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.  **ON BRIEF:**  Joseph E. Richotte, Brett J. Miller, BUTZEL LONG, P.C., Bloomfield Hills, Michigan, for Appellee.  Jennifer S. Goldstein, Paul D. Ramshaw, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.  Barbrie Logan, Detroit, Michigan, pro se.

───────────────

## OPINION

───────────────

JOHN K. BUSH, Circuit Judge.  This case requires us to determine, as a matter of first impression, whether the statute of limitations of Title VII of the Civil Rights Act of 1964,

codified at 42 U.S.C. §§ 2000e et seq., may be contractually shortened for litigation. Barbrie Logan worked as a cook for MGM Grand Detroit Casino ("MGM"). As part of her job application, she agreed to a six-month limitation period to bring any lawsuit against her employer. After leaving the job, she sued MGM under Title VII, alleging employment discrimination. Her former employer asserted a statute of limitations defense: although Logan arguably brought her claim within the statutory period required by Title VII, she waited longer than the limitation period provided in her employment application. The district court agreed and granted summary judgment to MGM.

On appeal, Logan argues that the contractual limitation period cannot supersede the statutory limitation period for bringing suit under Title VII. We agree. The limitation period of Title VII is part of an elaborate pre-suit process that must be followed before any litigation may commence. Contractual alteration of this process abrogates substantive rights and contravenes Congress's uniform nationwide legal regime for Title VII lawsuits. Therefore, we **REVERSE** the decision of the district court.

## I.  BACKGROUND

Logan began her employment as a culinary utility worker for MGM in August 2007. In the application process, Logan agreed to a six-month limitation period as a condition of employment:

> I agree that any claim or lawsuit arising out of my employment with, or my application for employment with, MGM Grand or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. While I understand that the statute of limitations for claims arising out of an employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations set forth herein, and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.

R. 40-4, PageID 641. After several years working at MGM, Logan resigned on December 4, 2014. Logan's resignation was, she alleges, "due to discrimination caused by her employer" and therefore a constructive discharge. R. 42, PageID 820. On July 8, 2015—216 days later—Logan filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against MGM. In the Charge of Discrimination, Logan alleged that she "was subjected to

different terms and conditions of employment based on [her] sex . . . and in retaliation for . . . participation in protected activity." R. 40-17, PageID 779. The EEOC investigated Logan's allegation and issued her a right-to-sue letter in November 2015. On February 17, 2016—440 days after resigning—Logan sued MGM for discrimination under Title VII.

MGM moved for summary judgment, arguing that Logan's employment agreement required her to commence any action arising out of her employment within six months and that her failure to do so barred her claim. The magistrate judge assigned to the case agreed with MGM and issued a Report and Recommendation to that effect. The district court adopted the Report and Recommendation and entered summary judgment in favor of MGM. Logan timely appealed.

We review de novo the district court's decision to grant summary judgment. *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, there is no dispute as to any material fact. It is undisputed that Logan agreed to be bound by a six-month limitation period, and the relevant dates are not in controversy. This case thus turns on a purely legal issue: whether a contract can alter the limitation period for suit established by Title VII.

Resolution of this issue turns on consideration of both (1) the detailed enforcement scheme of Title VII and (2) the national implications of congressional anti-discrimination policy. These considerations, discussed in turn below, lead us to hold that MGM may not enforce the contractual alteration of the Title VII limitation period.

## II. DISCUSSION

A.    Enforcement Scheme of Title VII

Title VII entitles employees to be free from discrimination in the workplace and gives them a remedy for discrimination that they might suffer. Title VII is not the only federal statute that gives a private remedy to Americans who have been discriminated against in the workplace. However, as explained below, Title VII is unique among workplace anti-discrimination laws.

Under Title VII employers may not (1) "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin," or (2) "deprive any individual of employment opportunities . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII enforcement relies on a combination of public and private action and mandates that the EEOC, the federal agency tasked with enforcing Title VII, must afford non-compliant employers the chance to voluntarily cure their violations before Title VII litigation may be brought against them. *See Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367–68 (1977) ("When Congress first enacted Title VII in 1964 it selected '(c)ooperation and voluntary compliance . . . as the preferred means for achieving' the goal of equality of employment opportunities." (alteration in original) (quoting *Alexander v. Gardner Denver Co.*, 415 U.S. 36, 44 (1974))). Consequently, a protected individual may not simply sue a recalcitrant employer under Title VII without having first brought the dispute before the EEOC for resolution.

The EEOC process begins with a "charge" filed by the victim of discrimination. Generally, the charge must be filed with the EEOC "within 180 days of the occurrence of the alleged unlawful employment practice." *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110 (1988) (citing 42 U.S.C. § 2000e-5(e)). However, the filing period may be extended to 300 days in jurisdictions that have "State or local law prohibiting the unlawful employment practice alleged," 42 U.S.C. § 2000e-5(d), and "a State or local agency with authority to grant or seek relief from such practice," *id.* § 2000e-5(e)(1). Within such jurisdictions, known as "deferral jurisdictions," the 300-day limitation period applies so long as the complaining employee has "instituted proceedings with [the applicable] State or local agency." *Id.*; 29 C.F.R. § 1601.13. Michigan, the state where this case arises, is a deferral jurisdiction, and the Michigan Department of Civil Rights (MDCR) is the applicable agency in that state for investigating unlawful employment practices. *See* 29 C.F.R. § 1601.13.

To benefit from the extended limitation period, the complaining employee must actually "institute[] proceedings" with the appropriate state agency. 42 U.S.C. § 2000e-5(e)(1). For the first sixty days after the employee files her complaint with that agency, it maintains exclusive

jurisdiction over the complaint, unless it terminates the complaint earlier. *Id.* § 2000e-5(c). Thus, the time that the state agency spends with the complaint (up to sixty days) effectively trims the 300-day limitation period by that much. *Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n.16 (1980). This consequence is mitigated by EEOC "work-sharing agreements" with state and local agencies, which allow employees in deferral jurisdictions to gain the benefit of the full 300-day limitation period. 29 C.F.R. § 1601.13(c). Under a work-sharing agreement, if an employee in a deferral state initially files a charge with the EEOC, the EEOC may share the charge with the state agency, which may then "waive the 60-day deferral period and thus authorize the EEOC to take immediate action . . . ." *Comm. Office Prods. Co.*, 486 U.S. at 121. Consequently, in a deferral state like Michigan, where the EEOC has entered into a work-sharing agreement with the MDCR, the employee will have preserved her claim if within 300 days of the allegedly discriminatory acts she either (a) institutes proceedings with the state agency and also then files the charge with the EEOC, or (b) files only with the EEOC, which under the work-sharing agreement, refers the charge to the applicable state agency.

Upon receipt of a charge, the EEOC investigates its allegations. The EEOC has exclusive jurisdiction over the subject matter of the charge for 180 days. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999); 42 U.S.C. § 2000e-5(f)(l). The EEOC will issue the complaining employee a right-to-sue letter if the agency makes one of the following four determinations: (1) where the EEOC determines that "there is not reasonable cause to believe that an unlawful employment practice has occurred," (2) where the EEOC determines that a violation has occurred, and that the employer refuses to enter into a conciliation agreement, and the EEOC decides not to pursue a civil action against the employer, (3) where the EEOC has entered into a conciliation agreement but the complaining employee has not entered into the conciliation agreement, or (4) where the charge is dismissed. 29 C.F.R. §§ 1601.19(a), 1601.28(b). Once the EEOC issues a right-to-sue letter, the employee has ninety days to sue the employer. 42 U.S.C. § 2000e-5(f)(1).

Unlike other anti-discrimination laws, Title VII does not merely provide wronged employees with damages remedies. Instead, in crafting Title VII, Congress chose "[c]ooperation and voluntary compliance . . . as the preferred means" for eradicating workplace discrimination.

*Alexander*, 415 U.S. at 44 (1974). Through the pre-suit process described above, Congress "established a procedure whereby . . . the [EEOC] would have an opportunity to investigate individual charges of discrimination, to promote voluntary compliance with the requirements of Title VII." *Id.*

"[I]n contrast to agencies like the National Labor Relations Board, 29 U. S. C. § 160, and the Merit Systems Protection Board, 5 U. S. C. § 1204," the EEOC has no authority to adjudicate claims. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019). When an employee files a charge with the EEOC, the agency investigates the allegations. 42 U.S.C. § 2000e-5(b). If the EEOC investigation determines that the charge has merit, the EEOC must "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* Only after informal methods have been exhausted can the judicial power of federal courts be brought to bear upon recalcitrant employers. Thus, the EEOC's role is not to provide relief directly to an aggrieved employee, but to mediate between the employee and her employer.

These cooperative mechanisms have important implications for an employee who has suffered workplace discrimination. She must first wait (during the EEOC's 180-day period of exclusive jurisdiction) and then hurry (once the EEOC issues her a right-to-sue letter, she only has ninety days to file her claim). Any alterations to the statutory limitation period necessarily risk upsetting this delicate balance, removing the incentive of employers to cooperate with the EEOC, and encouraging litigation that gives short shrift to pre-suit investigation and potential resolution of disputes through the EEOC and analog state and local agencies.

Also, Title VII is distinguishable from many federally created causes of action in that Title VII contains its own limitation period. In crafting Title VII, Congress could have created a cause of action without any limitation period at all, or Congress could have used a general limitation period. *See, e.g.*, 28 U.S.C. § 1658 (federal catch-all statute of limitations). However, Congress created Title VII to be self-contained; that is, the applicable limitation period resides within Title VII itself.

The Supreme Court has told us that where statutes that create rights and remedies contain their own limitation periods, the limitation period should be treated as a substantive right. *See Davis v. Mills*, 194 U.S. 451, 454 (1904). And this type of substantive right generally is not waivable in advance by employees. *See Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 704 (1945).

Traditionally, statutes of limitations were regarded as procedural mechanisms. "[O]rdinary limitations of actions are treated as laws of procedure, and as belonging to the *lex fori*, as affecting the remedy only, and not the right." *Mills*, 194 U.S. at 454. However, there are exceptions to this general rule. "[C]ourts have been willing to treat limitations of time . . . like other limitations, and cutting down the defendant's liability . . . . The common case is where a statute creates a new liability, and in the same section or in the same act limits the time within which it can be enforced . . . ." *Id.* Further, we have held that where "the statute creating a cause of action also fixes a limitation of time in which an action may be brought, the limitation is regarded as a part of the substantive law of the cause of action." *Myers v. Alvey-Ferguson Co.*, 331 F.2d 223, 224 (6th Cir. 1964).

These considerations lead us to conclude that the 300-day limitation period to sue under Title VII is a substantive, rather than procedural, rule. And because "it [is] clear that there can be no prospective waiver of an employee's rights under Title VII," *Alexander*, 415 U.S. at 51, it naturally follows that the limitation period of this statute is not prospectively waivable as it pertains to litigation.[1]

This analysis is consistent with our prior case law in distinct but related areas. For example, in *Thurman v. DaimlerChrysler*, 397 F.3d 352, 358–59 (6th Cir. 2004), we held that a contractually shortened limitation period can control a claim under 42 U.S.C. § 1981. Section 1981 is similar in some respects to Title VII. Both Title VII and § 1981 prohibit discrimination in the employment context and provide a private right of action against violations of the prohibition. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975). Unlike Title

---

[1]There is no question that the substantive rights of Title VII may be waived *retroactively*, for example as part of a settlement agreement.

VII, however, § 1981 does not have a self-contained limitation period or an extensive procedure for bringing suit.

Additionally, in the ERISA**[2]** context, the Supreme Court has expressly allowed contractual limitation periods. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99 (2013). In *Heimeshoff*, the Court upheld a three-year contractual limitation period on an employee-benefit contract. *Id.* at 116. Of course, contractual limitation periods are especially relevant for ERISA, because the statute itself does not create substantive rights but instead regulates retirement benefit contracts. *See Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan*, 160 F.3d 1301, 1303 (6th Cir. 1988) ("An ERISA plan is nothing more than a contract, in which parties as a general rule are free to include whatever limitations they desire."). The Court stated that "[t]he principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan. 'The plan, in short, is at the center of ERISA.'" *Heimeshoff*, 571 U.S. at 108 (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013)).

By contrast, in the Fair Labor Standards Act (FLSA)**[3]** and Equal Pay Act (EPA)**[4]** contexts, we have disallowed contractual limitation periods. The FLSA requires employers to pay a minimum wage and overtime to certain employees, while the EPA forbids employers from salary discrimination on the basis of sex. *See* 29 U.S.C. §§ 206, 207. In 1947, Congress established that the limitation period for an FLSA claim would be two years, unless there was a "willful violation," in which case the limitation period would be three years. *Id.* § 255. Because the EPA was an amendment to the FLSA, the FLSA limitation period also applies to EPA claims. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 658 n.8 (2007) (explaining that claims under the Equal Pay Act are subject to the FLSA's limitation periods as codified at

---

**[2]**Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 29 U.S.C.).

**[3]**Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201–219).

**[4]**Equal Pay Act of 1963, Pub. L. No. 88-38, 77 Stat. 56 (codified as amended at 29 U.S.C. § 206(d)).

29 U.S.C. § 255), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5, *as recognized in Green v. Brennan*, 136 S. Ct. 1769, 1780 (2016).

In *Boaz v. FedEx Customer Information Services, Inc.*, 725 F.3d 603 (6th Cir. 2013), we examined the case of an employee who filed FLSA and EPA claims against her employer within the FLSA limitation period, but after the limitation period specified by her employment agreement. For FLSA claims, we first noted that the Supreme Court has already determined that substantive rights under the FLSA cannot be waived. *Id.* at 605–06 (citing *Brooklyn Savs. Bank*, 324 U.S. at 704 ("[A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy.")). We noted that the same holds true for EPA claims. *Id.* at 607. Although the Supreme Court has not specifically held that substantive rights under the EPA are non-waivable, "we presume that Congress is aware of the law (including judicial precedent) relevant to legislation it enacts," and therefore, "by folding the Equal Pay Act into the FLSA, Congress meant for claims under the Equal Pay Act to be unwaivable as well." *Id.* Having determined that substantive rights under the EPA and the FLSA are non-waivable, we then determined that a limitation period is not a purely procedural mechanism and that a shortened limitation period equates to a substantive waiver. *Id.* at 606–07. Therefore, we held the altered limitation period invalid and allowed the employee to proceed with her claim. *Id.* at 607.

We noted in *Boaz* that "the distinction between procedural and substantive rights is notoriously elusive." *Id.* at 606. However, as the Supreme Court and our own case law have made clear, when a federal law that extends rights to private individuals contains its own limitation period (or, as in *Boaz*, where Congress has separately crafted a statute of limitations to apply to a specific statute), we should put the statutory limitation period on the substantive side of the ledger. In situations where the limitation period was within the statute, such as the FLSA and the EPA, we have found it to be a non-waivable substantive right. In situations where only a general limitation period applied, such as ERISA and § 1981, we have allowed the limitation period to be contractually altered. In keeping with that distinction, we now hold that a contractual provision that purports to shorten the limitation period for bringing suit under Title VII is unenforceable.

Thus, enforcing the express limitation period of Title VII not only protects the scheme Congress created with that statute; it is also conceptually in harmony with our interpretation of similar statutes.

B.      Uniform National Scope of Title VII

Of equal importance to the detailed pre-suit mechanisms of Title VII is the uniform national scope of the policies that Congress enacted with that legislation. "The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers . . . ." *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30 (1971). In *Occidental Life Insurance Co. of California v. EEOC*, 432 U.S. 355, 358–59 (1977), the Supreme Court determined that this important objective of Title VII was national in scope and required uniform enforcement.

*Occidental* concerned EEOC actions under Title VII, rather than private actions by employees. Although Title VII contains a limitation period for private claims, it contains no such limitation period for EEOC actions. In *Occidental*, an employee of the Occidental Life Insurance Company filed with the EEOC a charge of discrimination against her employer. *Id.* at 357. More than three years after the filing of this charge, the EEOC filed suit against Occidental. *Id.* at 358. The district court granted summary judgment to Occidental, holding that the EEOC was bound by the 180-day limit for private enforcement actions or, alternatively, "that the action was subject to the most appropriate state limitations statute and was therefore barred by [California's] one-year limitation provision." *Id.* After the Ninth Circuit reversed the district court, Occidental appealed and the Supreme Court granted certiorari to determine the appropriate limitation period for an EEOC enforcement action under Title VII.

The Court focused first on the plain language of Title VII, finding that this language could not "support a determination that it imposes a 180-day time limitation on EEOC enforcement suits." *Id.* at 361. The Court also looked into the legislative history of Title VII and found nothing to support applying the 180-day limitation to EEOC enforcement actions. *Id.* at 365–66. The Court then examined whether state statutes of limitations should apply to EEOC enforcement suits and determined that they should not.

The Court first acknowledged that when a federally created cause of action "has not specified the period of time within which it may be asserted, the Court has frequently inferred that Congress intended that a local time limitation should apply." *Id.* at 367. However, even where Congress has not created a limitation period, not every federal cause of action should be limited by state statutes, because "[s]tate legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies . . . . State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute." *Id.* Because Title VII created an environment where a federal agency, the EEOC, has responsibility to enforce the law, "it is hardly appropriate to rely on the 'State's wisdom in setting a limit . . . on the prosecution.'" *Id.* at 368 (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975)). The Court was also concerned that California's one-year statute of limitations "could under some circumstances directly conflict with the timetable for administrative action expressly established in the 1972 Act." *Occidental*, 432 U.S. at 368–69. Finally, after rejecting a state-created statute of limitations—and thus effectively leaving EEOC actions under Title VII with no limitation period—the Court noted that if the EEOC engages in prejudicial delay, federal courts can impose equitable relief. *Id.* at 373.

The Court's logic in *Occidental* about Title VII extends from EEOC actions to private litigation as well. In *Occidental*, the Court rejected the imposition of state limitation periods where "their application would be inconsistent with the underlying policies of the federal statute." *Id.* at 367. Title VII creates a uniform, nationwide system using "an integrated, multistep enforcement procedure" to resolve claims of employment discrimination. *Id.* at 359. There is no reason to think that the national policies and integrated procedure that are central to EEOC actions are less important to private actions under Title VII. In addition to disrupting the elaborate procedural mechanisms of Title VII, the rule that MGM urges us to adopt would require courts in this circuit to rely on state-law contract principles. For example, the parties do not dispute in the instant case that a six-month limitation period is enforceable under Michigan

law. *See Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005).[5] It is not difficult to imagine, however, that in a different state courts could come to an opposite conclusion on this determination. This in turn would give rise to the anomalous result that similarly situated plaintiffs in different states would have different rights in the enforcement of wholly federal claims in federal courts. These disparate outcomes would certainly "frustrate or interfere with the implementation of [the] national policies" of Title VII, *Occidental*, 432 U.S. at 367, while derailing the "integrated, multistep enforcement procedure," *id.* at 359.

Logan seeks to enforce her rights under Title VII. Her employment application contained an agreement that purported to abrogate those rights. However, this abrogation would be prospectively detrimental to her substantive rights under federal law and would frustrate the uniform application of Title VII. We therefore hold that contractual clauses that purport to shorten the limitation period of Title VII to bring suit are not enforceable.

C.      Inapplicability of *Wolfe*, *Thurman*, and *Morrison*

Finally, we address two decisions, one of which we have already mentioned, that MGM heavily relies upon—*Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586 (1947) (*Wolfe*) and *Thurman v. DaimlerChrysler*, 397 F.3d 352 (6th Cir. 2004)—and one decision that neither party references—*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) (en banc). As explained below, these opinions superficially bear upon this case but, upon further analysis, do not control its outcome.

---

[5]In determining the enforceability of the clause under Michigan law, the district court cited *Timko v. Oakwood Custom Coating, Inc.*, 625 N.W.2d 101 (Mich. Ct. App. 2001), which used a reasonableness standard to determine whether the clause at issue was enforceable. It appears that the Michigan Supreme Court has since rejected the reasonableness standard and instead held that "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." *Rory v. Cont'l Ins. Co.*, 703 N.W. 2d 23, 31 (Mich. 2005). The Michigan Supreme Court determined that Michigan has no law or public policy against contractual limitation periods, and thus they are enforceable, unless a traditional defense such as "duress, waiver, estoppel, fraud, or unconscionability" would defeat the clause. *Id.* at 31 n.23.

1.　　*Wolfe*

MGM cites *Wolfe* for the basic notion that a contractual limitation period is enforceable against Title VII claims.  In *Wolfe*, the Supreme Court examined a contractual limitation period that abridged a statute of limitations for a state-law cause of action.  331 U.S. at 588.  The plaintiff, Wolfe, was an Ohio citizen who sued a fraternal society after it refused to issue benefits to Wolfe following the death of an insured member of the society, of whom Wolfe was the beneficiary.  *Id.*  Wolfe sued the organization in South Dakota for breach of contract, and under South Dakota law, a breach-of-contract action carried with it a six-year statute of limitations.  *Id.* at 588–89.  Further, there was a South Dakota statute that purported to nullify any contractual clause shortening the limitation period.  *Id.*  The insurance policy in question had a six-month limitation period that "was valid under the law of the state of the society's incorporation, Ohio." *Id.*  Wolfe had sued after the expiration of the six-month contractual limitation but before South Dakota's six-year statute of limitations had run.  *Id.*  The South Dakota Supreme Court upheld South Dakota's statutory provision and disallowed the contract's limitations clause.  *Id.* at 600.

The United States Supreme Court reversed the decision of the South Dakota Supreme Court.  Early in its opinion, the Court walked through general contract and conflict-of-law doctrines:

> [I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

*Id.* at 608.[6]  However, the ultimate determination of the United States Supreme Court in *Wolfe* was based on the Full Faith and Credit Clause of the federal Constitution, rather than on a general rule that federal courts must enforce contractual limitation periods:

> It is of the essence of the full faith and credit clause that, if a state gives some faith and credit to the public acts of another state by permitting its own citizens to become members of, and benefit from, fraternal benefit societies organized by

---

[6]This language has been interpreted as a general endorsement by the Court of contractual alteration of statutes of limitations.  For example, the district court relied on this theory of *Wolfe* to find in favor of MGM.  R. 51, PageID 1071.

such other state, then it must give full faith and credit to those public acts and must recognize the burdens and limitations which are inherent in such memberships.

*Id.* at 625. For that reason, the Court enforced the Ohio contractual limitation period. *Id.*

*Wolfe* is distinguishable on at least three bases. First, as noted, the logic that compelled the holding in *Wolfe* was predicated upon the courts of one state accepting—under the Full Faith and Credit Clause—the law of another state. *Id.* In this case, we are not confronted with a full-faith-and-credit problem, and even to the extent that a given state such as Michigan allows a contractual amendment of a general statute of limitations, because this case concerns Title VII, a federal statute, we must analyze Title VII through the lens of federal law and precedent rather than Michigan law and precedent.

Second, even if *Wolfe* was decided on the basis of general contract principles, it was being applied to a contract clause that altered the statute of limitations *for breach of the underlying contract*. "[A] provision in a contract may validly limit . . . the time for bringing an action *on such contract* . . . ." *Id.* at 608 (emphasis added). Although the present case involves an employment agreement, the shorter contractual limitation period as modified here is not being asserted by MGM to prevent an action for breach of the employment agreement. Instead, MGM wants to use the employment agreement to prevent Logan from suing under Title VII. There can be no reasonable dispute that so long as Michigan law allows such a contractual provision, MGM and Logan were free to agree to a different limitation period for breach of an employment contract than the general Michigan statutory limitation period for contract actions. But whether such a provision can limit Logan's ability to sue under Title VII is a different question.

Third, the key language from *Wolfe* indicates that a contractual limitation period may be shorter "than that prescribed in the general statute of limitations." *Id.* Here, Logan's limitation period is not controlled by any "general statute of limitations." *Id.* Instead, Title VII, the same statute that created her rights, also regulates the applicable limitation period. Thus, the limitation periods of Title VII could actually be construed as "a controlling statute to the contrary," *id.*, that requires application of those statutorily prescribed limitation periods rather than allowing contractual limitation periods. This can be contrasted with, for example, 42 U.S.C. § 1983,

which does not contain a built-in limitation period, but rather is governed by general statutes of limitations. *Owens v. Okure*, 488 U.S. 235, 239 (1989). For these reasons, we do not believe that the Court's language in *Wolfe* should be read as a sweeping endorsement of the enforceability of contractual limitation periods in all situations.

2.          *Thurman*

MGM also relies extensively upon *Thurman v. DaimlerChrysler*, 397 F.3d 352 (6th Cir. 2004), which we distinguished earlier as a § 1981 case but address in more depth here because of MGM's contention that *Thurman* also should control Title VII interpretation. MGM claims that *Thurman* clearly stands for the proposition that contractual limitation periods are enforceable against Title VII claims and goes so far as to characterize the instant appeal as a collateral attack on the *Thurman* holding. However, a closer reading of the facts and procedural history of *Thurman* contradicts MGM's contentions.

In *Thurman*, the plaintiff was an employee of DaimlerChrysler whose employment agreement shortened her limitation period to six months. *Id.* at 354. She sued DaimlerChrysler for claims relating to sexual harassment she allegedly experienced in the workplace. *Id.* DaimlerChrysler asserted that her claims were time-barred because she waited more than six months after the alleged harassment to bring her claim. *Id.* The district court agreed with DaimlerChrysler and dismissed her claim. *Id.* On appeal, we affirmed. *Id.* According to MGM, this is clear controlling precedent "that such clauses are valid and enforceable in employment discrimination lawsuits including Title VII claims." Appellee Br. at vii. The EEOC, amicus in this case, argues by contrast that *Thurman* was not a Title VII case at all, and thus that its holdings are not applicable here. These competing claims require deeper scrutiny.

In explaining the procedural history of that case, the *Thurman* court stated that:

On June 1, 2000, the Thurmans filed a lawsuit in federal district court, naming DaimlerChrysler and Pittman as defendants, alleging violations of the Michigan Elliot Larsen Civil Rights Act, Title VII, 42 U.S.C. § 1981, and various state law tort claims. On December 15, 2000, the suit was dismissed by the district court due to the repeated failure of the Thurmans' counsel to appear and participate in court ordered conferences. (J.A. 531–53). While the district court permitted reinstatement of the action for good cause within 30 days, the Thurmans did not

move to reinstate the action or appeal the dismissal. Instead, the Thurmans filed a second lawsuit in August 2001, the present suit before the Court, in the Oakland County Circuit Court alleging the same claims as the previous suit.

*Thurman*, 397 F.3d at 355. What this procedural history fails to explain, however, is that while the initial lawsuit was a Title VII case, the new lawsuit *did not include any claims under Title VII.*[7] Instead, the new lawsuit was a § 1981 case only.

MGM concedes that *Thurman* was not actually a Title VII case but insists that it is nonetheless controlling precedent for Title VII claims. According to MGM, although the *Thurman* panel committed an "analytic error[,] . . . that precedent nonetheless constitutes binding *stare decisis*. No legal authority empowers [a subsequent] panel to reconsider, reverse, overrule, or modify the legal pronouncements of a prior published decision of this circuit." Appellee Br. at 11 (alteration in original) (quoting *Sam & Ali, Inc. v. Ohio Dep't of Liquor Control*, 158 F.3d 397, 405 (6th Cir. 1998)).

However, we do not believe that the *Thurman* panel was actually mistaken about what type of case it was hearing, and we can find no evidence that this was the case. The panel accurately stated that there was initially a suit under § 1981 and Title VII, but that case was dismissed, and a new suit was filed asserting the same claims. Title VII and § 1981 have some overlap, and we believe that the panel there was using the word "claims" to indicate that the complained-of conduct in the second suit was the same conduct as in the first suit. The language used in the *Thurman* decision was perhaps inartful, and susceptible of misinterpretation, but that does not mean that the *Thurman* panel was unaware of what law it was adjudicating.

Further, even if MGM is correct, and the *Thurman* panel somehow mistakenly thought it was deciding a Title VII case, this would not be an "analytic error" at all but would instead be a fundamental mistake over what law the panel should have been interpreting. Although there are many techniques for determining the difference between binding precedent and non-binding dicta, one approach is to ask whether the questionable language is essential to the holding's reasoning. *See Tyler v. Cain*, 533 U.S. 656, 663 n.4 (2001) ("[C]ontrast[] dictum with holdings, which include the final disposition of a case as well as the preceding determinations '*necessary*

---

[7]This quote is the only example in *Thurman* where the opinion cites, references, or mentions Title VII.

to that result.'") (third alteration in original) (citation omitted)).  Applying this method to *Thurman*, we ask: if the reference to Title VII was removed from *Thurman*, would the decision necessarily have come out differently? The answer here is "no." Even if the *Thurman* panel mistakenly thought differently, *Thurman* was not a Title VII case at all.  Therefore, any logic concerning the applicability of the decision to Title VII can be conceptually removed from the decision without affecting the outcome.  To put it another way, because the plaintiffs were not suing under Title VII, and the defendants did not raise a statute of limitations defense under Title VII, Title VII was not before the *Thurman* panel and that panel therefore had no authority to adjudicate the applicability of such a defense to Title VII.  Thus, while the *Thurman* opinion is binding precedent as to § 1981 cases, it does not control Title VII cases.

### 3.    *Morrison*

*Morrison* is another opinion of our court that, though not cited by either party or the district court, requires attention.  *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) (en banc).  This decision was a consolidated appeal reviewing two similar cases that turned on whether arbitration agreements are enforceable in the Title VII context.  Both plaintiffs had signed employment agreements in which they agreed to arbitrate their claims in non-Article III forums.  The district court in Lilian Morrison's case found that her arbitration agreement was enforceable.  In the case of the other plaintiff, Mark Shankle, the district court found the arbitration agreement to be unenforceable.  On their respective appeals, we consolidated the cases and heard them en banc.  Of particular relevance to this discussion are the arguments made by the first plaintiff, Morrison.

Morrison had agreed to arbitrate rather than litigate employment disputes.  Her employment agreement included "rules and procedures address[ing] a variety of arbitral matters, including the time limitations for filing a request for arbitration, the limitation on remedies available to plaintiffs in the arbitral forum, filing fees, the payment of arbitration costs, discovery, and attorney fees." *Id.* at 654.  The agreement required her to file any request for arbitration "within one year of the date on which the Associate knew, or through reasonable diligence should have known, of facts giving rise to the Associate's claim." *Id.* (quotation omitted).  Additionally, in the event of arbitration, Morrison agreed to pay a $75 filing fee and to

split the costs of the arbitration with Circuit City. *Id.* at 654–55. The agreement also limited the discovery procedures available to Morrison and, most importantly, placed a cap on the damages available through the arbitration process. *Id.* at 655.

On appeal, Morrison presented several arguments as to why her arbitration agreement was unenforceable: (1) it limited her substantive remedies under federal law; (2) it impeded her ability to vindicate her rights in any forum; (3) it was an unenforceable contract of adhesion; and (4) the arbitration agreement was unenforceable under Ohio contract law. *See generally* Brief for Appellant, *Morrison*, 317 F.3d 646 (6th Cir. 2003) (en banc) (No. 99-4099), 2000 WL 35595123 at *10–18. The contractual limitation period was not one of the primary issues that Morrison raised to argue that the arbitration agreement was unenforceable. Instead, the limitations issue was incorporated briefly into her second and third arguments.

Regarding her argument about access to "any forum," Morrison argued that "[t]he shortening of the statute of limitations period require[d] invalidation of the [arbitration] agreement." *Id.* at *14. As part of her argument that the arbitration was an unenforceable contract of adhesion, Morrison also asserted that "Circuit City's arbitration agreement is also unconscionable and invalid because it shortens the statute of limitations period provided by federal and state law and it sharply curtails discovery allowed by Plaintiff under Federal and Ohio Rules of Civil Procedure." *Id.* at *17.

We held that the provisions in the arbitration agreement that limited Morrison's substantive recovery were unenforceable because they "significantly undermine[d] Title VII's remedial purpose." *Morrison*, 317 F.3d at 673. However, we did not invalidate the arbitration agreement in toto, and particularly, in footnote sixteen of *Morrison*, we rejected Morrison's argument that the limitation period contained in the agreement rendered the agreement unenforceable. Footnote sixteen states:

> We conclude, however, that the provisions regarding discovery and the limitations period for filing a request for arbitration in the agreement at issue are enforceable. In *Gilmer*, the Supreme Court rejected an argument similar to Morrison's regarding discovery, noting that it was "unlikely . . . that . . . discrimination claims require[d] more extensive discovery than other claims that [the Court] found to [be] arbitrable, such as RICO and antitrust claims." [*Gilmer v. Interstate/Johnson*

> *Lane Corp.*, 500 U.S. 20, 31 (1991)]. The Supreme Court further held that the claimant had failed to make a showing that the discovery provisions for arbitration "will prove insufficient to allow . . . claimants . . . a fair opportunity to present their claims." *Id.* In this case, although Morrison has asserted that the discovery allowed under the Circuit City arbitration rules is more limited than that generally allowed in federal district court, she has failed even to attempt to show that such restrictions prevent either her or any other claimants from presenting their claims. Additionally, Morrison has failed to show that the one-year limitations period in the agreement unduly burdened her or would unduly burden any other claimant wishing to assert claims arising from their employment. Therefore, we reject Morrison's arguments regarding the discovery and limitations provisions in the Circuit City arbitration agreement.

*Id.* at 673 n.16. This footnote explains that the one-year limitation period in Morrison's arbitral agreement did not render the entire agreement unenforceable because it was not "unduly burden[some]." *Id.*

We do not believe that *Morrison* controls our case. *Morrison* was primarily concerned with determining circumstances under which courts should invalidate arbitration agreements (or clauses of arbitration agreements). Resolving this issue required carefully balancing the "liberal policy favoring arbitration and the important goals of federal anti-discrimination statutes." *Id.* at 653. To resolve the tension in these two federal goals, in *Morrison* we employed a "case-by-case" approach, under which litigants have the "opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Id.* at 663.

Through the Federal Arbitration Act (FAA),[8] Congress expressly authorized arbitration in lieu of litigation for resolving disputes, including controversies involving federal statutes. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002) ("We have held that federal statutory claims may be the subject of arbitration agreements that are enforceable pursuant to the FAA because the agreement only determines the choice of forum."). However, outside the arbitration context, Congress has not authorized litigants to alter the Title VII limitations periods. Therefore, the analysis in *Morrison* is of limited, if any, application here. When we examined

---

[8]Federal Arbitration Act, Pub. L. No. 68-401, 43 Stat. 883 (codified as amended at 9 U.S.C. §§ 1–16).

the limitation period in *Morrison* we applied the case-by-case approach to determine whether Morrison was "unduly burdened" by that term in her arbitration agreement. Morrison did show that the cost-splitting and limitations of remedies provisions in her arbitral agreement deterred herself and similarly situated potential claimants from pursuing their claims, and those provisions were invalidated and severed. However, as to the one-year limitation period and discovery provisions in her arbitral agreement, we determined that Morrison "failed to show that [those provisions] unduly burdened her or would unduly burden any other claimant wishing to assert claims arising from their employment." *Morrison*, 317 F.3d at 673 n.16.

To the extent that footnote sixteen of *Morrison* establishes a legal principle relevant here, it is this: a one-year limitation period to bring a Title VII claim to arbitration is not unduly burdensome, and therefore such a provision is enforceable. Because the instant case involves a significantly shorter contractual limitation period, *Morrison* is of little, if any, persuasive force to show that Logan's limitation period is enforceable. But more fundamentally, because the instant case does not involve an arbitration agreement, the underlying logic of *Morrison*—rooted in enforcement of the FAA—simply does not apply. Therefore, *Morrison*, like *Wolfe* and *Thurman*, is inapposite.**⁹**

---

**⁹**On appeal, MGM also argued for an additional alternative ground on which we could affirm the district court: Logan's failure to prove that she had satisfied the deferral requirements of Title VII. *See* Appellee Br. at 20–22. After the district court granted summary judgment to MGM, Logan moved for reconsideration. In denying Logan's motion for reconsideration, the district court stated that Logan had not submitted any proof on the record that she had met the deferral requirements, and that therefore, even in the absence of the six-month contractual limitation period, Logan would only be entitled to a 180-day limitation, and thus her claims must fail. *See* R. 60, PageID 1141. It is unclear why the district court raised this issue sua sponte, given that it was never raised by MGM, and especially considering that MGM's motion for summary judgment conceded that in the absence of the contractual limitation period, the 300-day deferral limitation period would apply. *See* R. 40, PageID 559. In any event, Logan appealed the district court's summary judgment decision before the district court answered her motion for reconsideration, and we do not consider the motion for reconsideration before us for purposes of this appeal. To the extent that issues raised by the motion for reconsideration are still relevant to further proceedings, they may be addressed on remand.

## III. CONCLUSION

We find that a contractually shortened limitation period, outside of an arbitration agreement, is incompatible with the grant of substantive rights and the elaborate pre-suit enforcement mechanisms of Title VII.  Logan was entitled to a 300-day statutory limitation period.[10]  The decision of the district court to grant summary judgment to MGM therefore is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

---

[10]We note that MGM has preserved a statute-of-limitations defense based on the 300-day limitation period of Title VII.  In its motion for summary judgment, MGM averred that "even if the limitations waiver were not considered, Plaintiff's Title VII claims are subject to a 300-day limitation period." R.40, PageID 559.  Some of Logan's claims may be time-barred, even using a 300-day limitation period.  Because that question was not before us, we will not resolve it here.